Wayne V Meuleman, ISB #1419
Anna E. Eberlin, ISB #7718
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, Idaho 83702
(208) 342-6066 Telephone
(208) 336-9712 Fax
meuleman@lawidaho.com
I:\4863.002\Federal Pleadings\Summary Judgment (Memo).doc

Attorneys for Plaintiffs

UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD KAYSER and MARY KAYSER,<br><br>Plaintiffs,<br><br>v.<br><br>PAM JANE McCLARY, an individual<br><br>Defendant. | Case No. 10-119<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

COME NOW Donald Kayser and Mary Kayser ("Plaintiffs" or "Kaysers"), by and through their attorneys of record, Meuleman Mollerup, LLP, and file their Memorandum in Support of Motion for Partial Summary Judgment.

**I.
INTRODUCTION**

Plaintiffs' Motion for Partial Summary Judgment (the "SJ Motion") seeks the Court's decision affirming the validity of an easement (the "Easement") which restricts the construction of fences or other improvements on Lot B, Block B of the Capitol Sites Subdivision in Ada

County, Idaho (the "Easement Lot") which would obstruct or impair the view from Lot D, Block B of the Capitol Sites Subdivision in Ada County, Idaho (the "Benefitted Lot"). Expeditious determination of the validity of the Easement may facilitate the mitigation of damages being suffered by Plaintiffs as a consequence of Defendant's actions. Judicial determination of damages and other remedies sought by Plaintiffs which may involve factual disputes are deferred.

Pam McClary inherited the Easement Lot from her father, James D. McClary, in January 2005. Her father's estate ("the Estate") treated the Easement as valid in order to reduce the taxable value of the Estate. Also, in order to reduce the property tax burden on the Easement Lot, Ms. McClary took a copy of the Easement to the Ada County Assessor's Office and protested the appraised value. As a result, the appraised value was reduced and thus Ms. McClary's property tax burden was likewise reduced. Ms. McClary has been paying lower property taxes based on the decreased property value since that time.

The Kaysers, the current owners of the Benefitted Lot, recently entered into an agreement to sell the Benefitted Lot to Scott and Susan Richardson. When Ms. McClary learned that a sale was pending, she caused a fence to be constructed on the Easement Lot which obstructed the view from the Benefitted Lot.

In an opinion filed on April 2, 2010, the Idaho Supreme Court stated that it "strongly disfavors the resort to forceful self-help in resolving property disputes." *Weitz v. Green*, 2010 WL 1254296, *10 (2010). In its analysis of a boundary dispute wherein one party took it upon itself to build a fence over the disputed parcel of land, the *Weitz* court stated:

> When parties have entered into a conflict over real property the rights are usually fixed far in advance of the exchange of attorneys' letters, or subsequent filing of a lawsuit, motions, depositions, and hearings. Making a bold physical attempt to gain,

> or regain, possession or control of a real property interest, by demolishing or erecting gates or fences, bulldozing land, etc., results in no strategic advantage. Instead, passions become inflamed, positions become entrenched, damages are exacerbated rather than mitigated, and the parties end up spending far more money in litigation than their supposed interest was worth to begin with. Attorneys who counsel their clients to engage in self-help, without being certain that the respective rights and responsibilities have been settled, do their clients a disservice. Clients who ignore the advice of counsel and take matters into their own hands do themselves a disservice. In short, parties who attempt to solve a property dispute through their own forceful action do so at their own peril.

*Id.*; s*ee also Skelton v. Haney*, 116 Idaho 511, 777 P.2d 733 (1989) (relating to interference with an easement by construction of a fence). The Idaho Supreme Court's admonition against "self-help" is clear.

As concerns a determination regarding the validity of the Easement, there are no genuine issues of material fact. The Affidavits of Donald Kayser, Scott Richardson and Anna E. Eberlin and the deposition of Defendant establish that:

1) James D. McClary granted the Easement to Paul Larsen ("Larsen"), the predecessor in interest to the Kaysers of the Benefitted Lot;

2) The Estate treated the Easement as valid for purposes of valuing the Easement Lot for estate tax treatment;

3) The Estate conveyed the Easement Lot to Ms. McClary subject to easements of record;

4) Ms. McClary treated the Easement as valid, requesting and receiving a decreased appraised value of the Easement Lot because of the Easement;

5) The Kaysers purchased the Benefitted Lot in reliance on the Easement and Mr. McClary's assurances regarding the Easement;

6) On or about January 15, 2010, the Kaysers entered into an agreement to sell the Benefitted Lot to Scott and Susan Richardson (the "Richardsons"); and

7) When Ms. McClary discovered a sale was pending of the Benefitted Lot, she caused a fence to be constructed on the Easement Lot which obstructed the view from the Benefitted Lot so the Kaysers could not convey an interest in the Easement.

In light of the foregoing, the instant matter presents no genuine issues of material fact which would preclude the Court from entering summary judgment in favor of Plaintiffs quieting Plaintiffs' rights, title and interest in the Easement.

## II.
## LEGAL STANDARD FOR SUMMARY JUDGMENT

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine material issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Importantly, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Instead, "only material factual disputes preclude summary judgment; factual disputes about immaterial terms are irrelevant." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248). The substantive law of a case determines which facts are material. *United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The United States Supreme Court has emphasized that summary judgment is a useful tool for isolating and terminating factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). In plain terms, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show the evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 9041 (7th Cir. 2003); *see also City of Mt. Pleasant, Iowa v. Associated Elec. Co-op Inc.*, 838 F.2d 268, 272 (8th Cir. 1988) (stating summary judgment motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact").

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial." *Miniero v. Craven*, Slip Copy, 2008 WL 1994871 at *2 (D. Idaho May 6, 2008) (quoting *Celotex*, 477 U.S. at 322).

### III.
### ARGUMENT

Plaintiffs seek partial summary judgment determining that the Easement is valid and that they are entitled to a declaratory judgment quieting title to the Easement. There are no issues of material fact, and thus Plaintiffs are entitled to judgment as a matter of law.

A.   **James McClary Granted an Express Easement to Paul Larsen.**

An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 301, 127 P.3d 196, 204 (2005). "An express easement, being an interest in real property, may only be created by a written easement." *Capstar Radio Operating Co. v. Lawrence*, 143 Idaho 704, 707, 152 P.3d 575, 578 (2007). "No particular forms or words of art are necessary [to create an express easement]; it is necessary only that the parties make clear their intention to establish a servitude." *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d

1235, 1238 (2006) (quoting *Seccombe v. Weeks*, 115 Idaho 433, 436, 767 P.2d 276, 279 (Ct.App.1989)). "An express easement may be created by a written agreement between the owner of the dominant estate and the owner of the servient estate." *Capstar*, 143 Idaho at 707, 152 P.3d at 578.

Creation of an easement by express agreement requires that the agreement be in writing as an easement is an interest in real property. *Shultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976); I.C. § 9-503. In describing an easement, "all that is required is a description which identifies the land which is the subject of the easement, and expresses the intent of the parties." *Northwest Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 181, 646 P.2d 422, 423 (1982) (citing *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954)).

After stating the legal description of the Easement Lot and the legal description of the Benefitted Lot, the "Grant of Easement" in the case at hand states in pertinent part:

> WHEREAS, Grantor did make a verbal agreement with Grantees at the time that Grantees purchased said Lot D [the Benefitted Lot] from Grantor that, as a material consideration for the purchase of said Lot D, Grantor would not build a structure on said Lot B.
>
> NOW THEREFORE IT IS AGREED AS FOLLOWS:
>
> 1. In consideration of the verbal agreement referred to above and other good and valuable consideration, Grantor does herby grant to Grantee an easement for an unobstructed view over said Lot B, Block B, Capitol Sites Subdivision, (described above) hereinafter the "servient estate" for the benefit of said Lot D, Block B, Capitol Sites Subdivision, (described above), hereinafter the "dominant estate."
>
> 2. The easement granted in this instrument shall run with the land and shall be appurtenant thereto and shall inure to the benefit of the parties hereto, their heirs, personal representatives, successors and assigns.

> 3. The owner of said Lot B, Block B, Capitol Sites Subdivision (described above), without the prior written consent of the owner of said Lot D, Block B, (described above) shall not construct anything on said Lot B, Block B, including fences, trees, shrubs, swimming pool, garage, home or personal property including recreational vehicles that would in any degrade or restrict the view from said Lot D, Block B.

*See* Grant of Easement, attached as Exhibit 1 to the Deposition of Pamela Jane McClary, attached as Exhibit A to the Eberlin Aff.

The Easement in this case clearly identifies the land which is subject to the easement, and expresses the intent of the parties with regard to the scope of the easement. *Northwest Pipeline*, 103 Idaho at 181, 646 P.2d at 423. Therefore, the Easement complies with I.C. § 9-503 and is valid.

**B. The Kaysers Purchased the Benefitted Lot as BFPs.**

"A bona fide purchaser is one who takes real property by paying valuable consideration and in good faith, i.e., without knowing of adverse claims." *Sun Valley Land and Minerals, Inc. v. Burt*, 123 Idaho 862, 866, 853 P.2d 607, 611 (Ct. App. 1993) (citing I.C. § 55-606; § 55-812); *see also Weitz v. Green*, 2010 WL 1254296 (Idaho 2010). "The theory behind the rule is to protect innocent purchasers and to allow them to obtain and convey unsullied interests. Generally, a person must take property through a 'conveyance' in order to be afforded the protective status of a bona fide purchaser." *Sun Valley Land and Minerals*, 123 Idaho at 866, 853 P.2d at 611.

The Idaho Code section addressing bona fide purchasers is Idaho Code § 55-606, which states:

> § 55-606. Conclusiveness of conveyance—Bona fide purchasers. Every grant or conveyance of an estate in real property is conclusive against the grantor, ***also against every one subsequently claiming under him***, except a purchaser or

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - Page 7**

> encumbrancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid judgment lien that is first duly recorded.

I.C. § 55-606 (emphasis added). By the plain and unambiguous words of the statute, a grant of an estate in real property is ***conclusive*** against the grantor and its successors. This statutory doctrine has been described in case law as an "estoppel of record." *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 666 (9th Cir. 1955) (applying Idaho law). In the *Griffeth* case, the plaintiffs' predecessors in interest had granted a power and light company a perpetual easement for flooding of lands by fluctuation of the river in operation of their plants. *Id*. The court found that such easement was binding upon plaintiffs as subsequent title holders of the land, as there was no evidence that the easement was invalid. *Id*. The written easement contained recitals of a previous overflow and circumstances of damage, and this constituted an estoppel of record in plaintiff's action to invalidate the easement and recover for flooding of portions of their land due to operations of defendant's dam and power plant. *Id*. The court stated, "The easement must be construed against successors of the grantor, since it was not gratuitous, but one for which consideration was given and compensation paid." *Id*. at 667.

In the case at hand, the Easement must be construed against Ms. McClary as successor in interest to Jim McClary. Under I.C. § 55-606, the Easement is conclusive against both the Estate and Ms. McClary. Moreover, "the recording of [a] deed . . . is prima facie evidence of acceptance of title to the property." *Hartley v. Stibor*, 96 Idaho 157, 160, 525 P.2d 352 (1974) (citing 8 Thompson on Real Property, § 4240 (1963)). The Personal Representative's Deed to the Easement Lot, which expressly mentioned that it was subject to all recorded easements, was recorded on or about January 25, 2005. Ms. McClary did not object to the state of title.

In fact, both the Estate and Ms. McClary have taken the position that the Easement is valid. According to the deposition testimony of Ms. McClary, the Estate treated the Easement as valid:

> Q. (Mr. Meuleman)   And did you also use the easement in valuing the amount of your father's estate?
>
> A. (Ms. McClary)   That is, I believe, what Ron Daly and John McGown did.
>
> Q.   And so for the purpose of disposing of your father's estate through probate?
>
> A.   Yes, they revised it.
>
> Q.   They reduced it because of the easement?
>
> A.   Yes.
>
> …
>
> A.   I did what Mr. McGown told me that I had to – you know, I should file it because my – that was to assist the Estate and reduce the tax on it.

*See* the McClary Depo., p. 101, l. 24 – p. 102, l. 7 and ll. 16-19.  The Estate acquiesced in and treated the Easement as valid in order to reduce the taxable estate.

Ms. McClary also treated the Easement as valid.  After Ms. McClary inherited the Easement Lot from her father's Estate, she protested the valuation of the Easement Lot for tax assessment of the Easement Lot with the county tax assessor's office because in her view, the Easement decreased the value of the Easement Lot. *See* the McClary Depo., p. 99, l. 19 – p. 100, l. 4.  In her deposition, Ms. McClary stated the following:

> Q. (Mr. Meuleman)   Tell me, what did you tell the Tax Assessor in connection with this easement?
>
> A. (Ms. McClary)   I showed it to him.

>	Q.	Why?
>
>	A.	Because it had an effect on the value of the property.
>
>	Q.	Okay. And did the Tax Assessor change the values for you?
>
>	A.	Yes, he did.
>
>	Q.	Did he change the value on the residence parcel or just on the easement parcel?
>
>	A.	On the easement.
>
>	Q.	And that would have been somewhere in 2005 or so when you acquired it?
>
>	A.	I can't give you an exact date. I don't know.
>
>	Q.	Okay. Well, why would you take an easement down to the Tax Assessor that you didn't believe was valid?
>
>	A.	Because it had to do with the Estate. It changed the value of the property. The Tax Assessor, I believe, had had it at $162 – I'm sorry – $162,000 – that may be incorrect – and when they redid the – oh, what do you call, it, the –
>
>	Q.	Appraised value?
>
>	A.	Yes, the appraised value – they redid the appraisal, and the value on it went from $162,000 to 0.
>
>	Q.	To 0?
>
>	A.	Yes. That's what the Tax Assessor said and what he did.
>
>	Q.	So you then got the benefit of reduced taxes on that lot, I take it?
>
>	A.	Yes, and I also – yes.

*See* the McClary Depo., p. 100, l. 14 – p. 101, l. 23. By taking the Easement to the Tax Assessor and disputing the taxable value, Ms. McClary ratified and acquiesced in the validity of

the Easement and accepted the benefit of lower taxes when the Tax Assessor reduced the appraised value of the Easement Lot.

From the time she inherited the Easement Lot, Ms. McClary has acquiesced in the validity of the Easement and benefitted from a decreased valuation of the Easement Lot for tax purposes. *See* the McClary Depo., p. 104, ll. 1-7.

Having no notice of any adverse claim at the time they purchased the Benefitted Lot, the Kaysers are bona fide purchasers. They purchased the Benefitted Lot "by paying valuable consideration and in good faith, i.e., without knowing of adverse claims." *Sun Valley Land and Minerals*, 123 Idaho at 866, 853 P.2d at 611. As innocent purchasers, their interest is "unsullied" and protected. *See id*.

C.   **The Kaysers Relied on the Validity of the Easement.**

The Kaysers conditioned their offer to purchase the Benefitted Lot on receiving "satisfactory documentation showing the McCleary [sic] lot behind subject property cannot be used as a building site for a new home." *See* <u>Exhibit A</u> to the Kayser Aff. To fulfill this condition, the sellers of the Benefitted Lot presented the Kaysers with an acknowledged and recorded Easement. *See* the Kayser Aff. at ¶ 4. After receiving a copy of the Easement, Mr. Kayser called Mr. McClary to discuss the background and intent of the Easement. *Id*. at ¶ 5. Mr. McClary explained the background of the Easement in detail and said he was glad to sign it because it merely confirmed his previous agreement with Paul Larsen. *Id*. at ¶ 5.

But for receiving the recorded Easement and receiving Mr. McClary's assurances, the Kaysers would not have purchased the Benefitted Lot. *See* the Kayser Aff. at ¶ 6. The Kaysers were not aware of any adverse claims against the Benefitted Lot, and ***thus they are bona fide purchasers for value***. The Kaysers' relied on the Easement, and Ms. McClary and the Estate

both treated the Easement as valid. Ms. McClary cannot now attack the Kaysers' status as bona fide purchasers. As such, the Kaysers respectfully request this Court to quiet Plaintiffs' rights, title and interest in the Easement so that they can convey the Benefitted Lot to the Richardsons without further damages and delay.

## IV.
## CONCLUSION

Based upon the foregoing, Plaintiffs' Motion for Summary Judgment, the Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment, the Affidavits of Donald Kayser, Scott Richardson and Anna E. Eberlin in Support of Plaintiffs' Motion for Summary Judgment, whatever further evidence may be presented at the hearing of this matter, and pleadings and papers filed herein, Plaintiffs respectfully request that their Motion for Summary Judgment be granted.

DATED this 20th day of April 2010.

MEULEMAN MOLLERUP LLP


/s/  Anna E. Eberlin
By:    Anna E. Eberlin
       Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 20th day of April 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/EFC system, which sent a Notice of Electronic Filing to the following parties:

**Julie Klein Fishcher** jfischer@morrowfischer.com

/s/     Anna E. Eberlin
Anna E. Eberlin

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - Page 13**