# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| DONALD KAYSER and MARY KAY KAYSER, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV 10-00119-REB |
| v. | ) ) ) ) ) | **MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| PAM JANE McCLARY, | ) ) | **(Docket No. 14)** |
| Defendant. | ) ) | |

Currently pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Docket No. 14). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Defendant Pam McClary's father, James McClary, owned four lots on Roberts Road in Boise, Idaho - Lots A, B, C, and D. *See* Def.'s Resp. to Pls.' Mot. for Summ. J., p. 2 (Docket No. 26) (citing Ex. A to 7/2/10 McClary Aff. at ¶ 4 (Docket No. 29)). In 1979, Mr. McClary entered into an option contract to sell Lot D to Paul and Iretta Larsen. *See* Def.'s Resp. to Pls.' Mot. for Summ. J., p. 2 (Docket No. 26). On February 12, 1980, Mr. McClary conveyed Lot D to the Larsens who, later, constructed a home on Lot D. *See id.* Significant to this action, at

**MEMORANDUM DECISION AND ORDER - 1**

some unknown point in time, it is believed that Mr. McClary verbally agreed with the Mr. Larsen not to build on Lot B - the adjacent property to the north of Lot D. *See id.* at pp. 2 & 8.[1]

On December 24, 1999, Plaintiffs Donald and Mary Kay Kayser made an offer to the Larsens to purchase Lot D. *See* Pls.' Stmt. of Undisp. Facts, p. 1 (Docket No. 15). The Kaysers' offer included the following handwritten condition:

> Seller providing Buyer satisfactory documentation showing the McClary lot behind subject property cannot be used as a building site for a new home.

*See id.* at p. 2 (citing Ex. A to 4/20/10 Kayser Aff. at ¶ 2 (Docket No. 14, Att. 2)). At that time, the Larsens' son, Rex Larsen, was the listing agent for Lot D, acting as the dual agent for both his parents and the Kaysers. *See* Def.'s Resp. to Pls.' Mot. for Summ. J., p. 3 (Docket No. 26).

According to Defendant, Rex Larsen then (1) "instructed his father's attorney to prepare an easement over Mr. McClary's Lot B"; (2) "dictated the terms to be included in the easement"; and (3) "delivered the written easement to Mr. McClary to sign." *See id.* at p. 3. This "Grant of Easement," contained the following provisions:

- WHEREAS, Grantor [Mr. McClary] did make a verbal agreement with Grantees [the Larsens] at the time that Grantees purchased said Lot D from Grantor that, as a material consideration for the purchase of said Lot D, Grantor would not build a structure on said Lot B.

- In consideration of the verbal agreement referred to above and other good and valuable consideration, Grantor does hereby grant to Grantees an easement for an unobstructed view over said Lot B for the benefit of said Lot D.

---

[1] None of the written documentation specific to the transaction between Mr. McClary and the Larsens make any reference to an easement over any of Mr. McClary's other property, including Lot B.

**MEMORANDUM DECISION AND ORDER - 2**

- The easement granted in this instrument shall run with the land and shall be appurtenant thereto and shall inure to the benefit of the parties hereto, their heirs, personal representatives, successors, and assigns.

- The owner of said Lot B, without the prior written consent of the owner of said Lot D, shall not construct anything on said Lot B, including fences, trees, shrubs, swimming pool, garage, home, or personal property including recreational vehicles that would in any way degrade or restrict the view from said Lot D.

*See* Ex. 1 to Pam McClary Depo., attached as Ex. A to 4/20/10 Eberlin Aff. at ¶ 2 (Docket No. 14, Att. 9). On or around January 11, 2000, Mr. McClary and the Larsens signed the Grant of Easement; Rex Larsen notarized both sets of signatures. *See id*. The Grant of Easement was then recorded on January 12, 2000. *See* 4/20/10 Kayser Aff. at ¶ 6 (Docket No. 14, Att. 2).

Mr. Kayser knew Mr. McClary well and, after receiving the Grant of Easement, called Mr. McClary "to discuss the background and intent of the [Grant of Easement]." *See id*. at ¶ 5.[2] According to Mr. Kayser, "Mr. McClary explained the background of the [Grant of Easement] in detail and said he was glad to sign it because it merely confirmed his previous agreement with Paul Larsen." *See id*.[3] Thereafter, the Kaysers purchased Lot D from the Larsens. *See id*. at ¶ 6.

Mr. McClary passed away in 2004. By a Personal Representative Deed, executed on January 24, 2005, Mr. McClary's estate conveyed Lot B and other property to Defendant Pam

---

[2] It is unclear whether, or to what extent, if any, Mr. McClary was aware that the Kaysers were interested in purchasing Lot D from the Larsens. *See* Kayser Depo. at 27:14-17, attached as Ex. E to 7/2/10 Fischer Aff. at ¶ 5 (Docket No. 28) ("So the call was basically good news bad news. The bad news is we're selling your house, but the good news is, we're moving in behind you. We're buying the Larsen property.").

[3] However, during his deposition, Mr. Kayser also testified that he did not "discuss the written agreement with [Mr. McClary] at all." *See* Kayser Depo. at 31:23-25, attached as Ex. E to 7/2/10 Fischer Aff. at ¶ 5 (Docket No. 28).

**MEMORANDUM DECISION AND ORDER - 3**

McClary. *See* Ex. 3 to Pam McClary Depo., attached as Ex. A to 4/20/10 Eberlin Aff. at ¶ 2 (Docket No. 14, Att. 9).

In early 2009, the Kaysers decided to sell Lot D and move to Oregon, ultimately entering into an agreement to sell Lot D to Scott and Susan Richardson on January 15, 2010. *See* 4/20/10 Kayser Aff. at ¶¶ 7 & 8 (Docket No. 14, Att. 2). On February 16, 2010, before the scheduled February 18, 2010 closing date, Mr. Kayser learned that Ms. McClary constructed a fence on Lot B (along the boundary line between Lots B and D), obstructing the view from Lot D. *See id.* at ¶ 9. As a consequence of the fence's construction, the Kaysers' sale of Lot D to the Richardsons was disrupted. *See id.* at ¶¶ 9-11.

The Kaysers bring this action, asserting the following four claims against Ms. McClary: breach of contract, tortious interference with contract, trespass, and quiet title/injunction. *See* Compl. at pp. 3-4 (Docket No. 1, Att. 3). As to their quiet title/injunction claim, Plaintiffs seek the entry of a decree, declaring the Grant of Easement to be valid and binding and, thus, having the effect of (1) enjoining Ms. McClary from taking any action in violation of the Grant of Easement and (2) ordering Ms. McClary to remove the above-referenced fence and other improvements constructed on Lot B. *See id.* at p. 4.

Through their Motion for Partial Summary Judgment, the Kaysers seek an order from the Court, affirming the validity of the Grant of Easement. *See* Mem. in Supp. of Mot. for Partial Summ. J., p. 1 (Docket No. 14, Att. 1). Specifically, the Kaysers argue that Messrs. McClary and Larsen memorialized their then-existing, verbal agreement with respect to Lot B by entering into the Grant of Easement and that they - the Kaysers - subsequently purchased Lot D as bona fide purchasers for value, understanding that Lot B would not be built upon. *See id.* at pp. 5-12.

In response, Ms. McClary challenges the validity of the Grant of Easement, arguing, first, that there was no consideration for the Grant of Easement, making it void; and, second, that Mr. McClary was not competent at the time he executed the Grant of Easement in any event. *See* Resp. to Mot. for Partial Summ. J., pp. 4-14. According to Ms. McClary, these defects in the Grant of Easement operate to nullify any claim that the Kaysers were bona fide purchasers for value. *See id*. at pp. 14-16.

## II. DISCUSSION

### A. The Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 5**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

**B.  Mr. McClary's Capacity to Enter into the Grant of Easement and the Kaysers' Status as Bona Fide Purchasers for Value**

A bona fide purchaser "is one who, at the time of the purchase, paid valuable consideration without actual or constructive notice of any outstanding adverse rights of another." *See Adams v. Anderson*, 127 P.3d 111, 116 (Idaho 2005) (citing *Haugh v. Smelick*, 887 P.2d 26, 28 (Idaho 1993)). "Additionally, a person is not a bona fide purchaser if he purchased the property with sufficient knowledge to put a reasonably prudent person on inquiry." *See id*.

**MEMORANDUM DECISION AND ORDER - 6**

Here, the Kaysers contend that, given (1) the predicate January 11, 2000 Grant of Easement, coupled with (2) the alleged assurances made during the subsequent telephone conversation between Mr. McClary and Mr. Kayser, their ultimate purchase of Lot D from the Larsens qualifies them as bona fide purchasers of Lot D - "conclusive against the grantor and its successors." *See* Mem. in Supp. of Mot. for Partial Summ. J., pp. 8-12 (Docket No. 14, Att. 1). Ms. McClary disagrees, arguing, in part, that her father lacked the capacity to enter into the Grant of Easement in the first place. *See* Def.'s Resp. to Pls.' Mot. for Summ. J., p. 11 (Docket No. 26) ("The Easement is invalid because James McClary was not competent to execute the document.").

The Kaysers dispute Ms. McClary's competency argument. First, according to the Kaysers, there is no conclusive evidence that Mr. McClary was mentally incapable on the day the Grant of Easement was actually executed - January 11, 2000. *See* Pls.' Reply in Supp. of Mot. for Partial Summ. J., p. 3, n. 1 (Docket No. 33) ("The affidavits only contain conclusory opinions regarding Jim McClary's competency surrounding that particular time period, but nothing specific as to the day the Easement was executed."). Second, even assuming Mr. McClary was impaired, the Kaysers submit that their status as bona fide purchasers is unaffected, such that title to Lot D and the corresponding benefits of any easement on the adjacent Lot B pass seamlessly to them regardless.

Preliminarily, the issue of Mr. McClary's competency as of January 11, 2000 is one of fact. In addition to her own testimony concerning her father's deteriorated condition around the time the Grant of Easement was signed (*see* 7/2/10 McClary Aff. at ¶ 8(a)-(f) (Docket No. 29)), Ms. McClary offers the testimony of three home health care professionals who provided aid and

**MEMORANDUM DECISION AND ORDER - 7**

service to Mr. McClary during this relevant time frame. *See* 7/1/10 Sipiora Aff. (Docket No. 30); *see also* 6/30/10 Brewer Aff. (Docket No. 31); 7/2/10 Aaron Aff. (Docket No. 32). Each of these medical providers commented on Mr. McClary's declining physical and mental health during late 1999 and early 2000, opining further that Mr. McClary would not have been in a position to understand the Grant of Easement's practical and legal significance. *See id.* Therefore, while it is possible that Mr. McClary was capable of entering into contracts affecting his and/or others' property on January 11, 2000 (or, alternatively, experienced a lucid interval at the time he considered and affixed his signature to the Grant of Easement), viewing the inferences drawn from the facts most favorably to Ms. McClary, as the Court must, it cannot be said, as a matter of law, that Mr. McClary was competent to enter into the easement agreement on January 11, 2000. That is not to say that the ultimate determination of such facts might not turn in favor of the Kaysers, as the fact of illness and physical ailments do not equate necessarily to a lack of mental capacity, nor is the fact of mental confusion in an elderly person at one point in time indicative of mental confusion at all times. However, the affidavits submitted by Ms. McClary on this point are sufficient to raise a genuine issue of material fact upon this particular question.

Even so, the Kaysers argue in the alternative that a legitimate bona fide purchaser trumps any such attacks to the underlying agreement's validity. The law is not entirely certain upon the question of whether, or to what effect, an underlying agreement's voidability by virtue of a signatory's incapacity impacts the status of a subsequent bona fide purchaser and the benefits the latter might enjoy despite unknown, adverse claims. For example, in *Keville v. McKeever*, 675 N.E.2d 417 (Mass. App. Ct. 1997), the Appeals Court of Massachusetts was confronted with a

similar issue, specifically addressing whether the grantee of a voidable deed may give good title to a bona fide purchaser. *See id*. at 430-31. Answering that question in the negative, the court relied on an earlier, Massachusetts Supreme Judicial Court decision which reasoned:

> The deed of the plaintiff to her son was voidable because she was *non compos mentis* at the time of the execution and delivery. Such a deed is ineffectual to convey a title to land good against the grantor unless ratified and confirmed by the grantor when restored to soundness of mind. If the mental incompetency of the plaintiff is established in a proceeding by which the defendant is bound, the defendant as an innocent purchaser for value from the son to the extent of its mortgage stands no better than the son and acquired no title to the land. Since the deed of the plaintiff to the son has been declared void, she has been in truth the owner of the land at all times here material.

*See id*. (quoting *Cleaveland v. Malden Sav. Bank*, 197 N.E. 14 (Mass. 1935) (internal citations omitted)). In other words, a defect in an agreement's construction is not necessarily overlooked when a later bona fide purchaser seeks to avail itself of that potentially defective agreement. *See* Milton R. Friedman and James Charles Smith, *Friedman on Contracts and Conveyances of Real Property* § 8:13 (2010) ("The purchaser under a forged deed gets no title and can give none to a bona fide purchaser or mortgagee."); *but see Swinehart v. Turner*, 259 P. 3 (Idaho 1927) ("While a purchase by a representative at his own sale is voidable, a deed from him conveying the property to a bona fide purchaser for a valuable consideration will pass title, and after such a conveyance the original purchase will not be set aside.").

Still, none of the Kaysers' arguments is of any significance if either of them was (or should have been) on notice of any issues surrounding the Grant of Easement. *See supra* at pp. 6-7; *see also* Pls.' Reply in Supp. of Mot. for Partial Summ. J., p.3, n. 1 (Docket No. 33) ("The competency of Jim McClary is not an issue before the Court unless Defendant can show that the Kaysers were aware of or had reason to suspect his competency.").

**MEMORANDUM DECISION AND ORDER - 9**

Whether Mr. McClary was competent during the relevant time cannot be resolved as a matter of law; it is an issue of fact that must be construed in Ms. McClary's favor when considering the Kaysers' Motion for Partial Summary Judgement. With this backdrop surrounding Mr. McClary's capacity, then, whether the Kaysers knew or should have known that Mr. McClary was incompetent when he signed the Grant of Easement is also an issue of fact. Despite the Kaysers' arguments to the contrary, the record contains evidence from Mr. McClary's medical providers that Mr. McClary was mentally infirm around the time the Grant of Easement was executed. *See supra* at pp. 7-8. Because Mr. Kayser (1) was Mr. McClary's neighbor during this time, (2) admitted to knowing Mr. McClary well, and (3) actually spoke with Mr. McClary after the Grant of Easement was signed (*but see supra* at p. 3, n. 3), an issue of fact exists as to whether Mr. Kayser - himself or through his agent, Rex Larsen - (and assuming Mr. McClary's incompetence as this Court must) knew or should have known that the Grant of Easement may be tainted/void as a consequence of Mr. McClary's condition.

The Court is mindful that, at least on this record, there is no flavor of the *Kaysers* seeking to take advantage of a man whom they had known for many years and considered a friend. To the contrary, it would seem that they were seeking to settle the waters upon an issue that they may have genuinely believed was generally understood to have been agreed upon, but not memorialized. Nonetheless, there is evidence that Mr. McClary was simply not in a sufficiently clear state of mind to competently enter into the Grant of Easement and that in moving forward in the manner that they did, the Kaysers were simply left with the risk that the transaction might be subject to question at some future date because of Mr. McClary's condition. That risk remained into the future, with the possibility that it might not ripen into an actual dispute, but

**MEMORANDUM DECISION AND ORDER - 10**

also with the possibility that it could ripen into an actual dispute. Construing such "unknowns" in Ms. McClary's favor in this procedural setting, the Kaysers' Motion for Partial Summary Judgment must be denied at this time.[4]

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the Kaysers' Motion for Partial Summary Judgment (Docket No. 14) is DENIED.

DATED: **January 15, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[4] In denying the Kaysers' Motion for Partial Summary Judgment, the Court is careful not to suggest either (1) that Mr. McClary was, in fact, incapacitated at the time he signed the Grant of Easement or (2) that the Kaysers were, in fact, aware of such incapacitation. This Memorandum Decision and Order reflects only that material issues of fact relate to these particular areas of inquiry; the undersigned is not prepared to resolve such issues as a matter of law in the Kaysers favor, based upon the record now before the Court. Additional issues related to any alleged lack of consideration accompanying the at-issue easement, Ms. McClary's (or, even, Mr. McClary's) motivations in relation to the tax/probate implications of the easement, and the Grant of Easement vis à vis any original agreement between Mr. McClary and Mr. Larsen do not change these realities.

**MEMORANDUM DECISION AND ORDER - 11**