IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD KAYSER and MARY KAY KAYSER, | Case No. CV 10-00119-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE: PLAINTIFFS' MOTION FOR LEAVE TO NAME EXPERTS AND ADD CLAIM FOR PUNITIVE DAMAGES** |
| v. | |
| PAM JANE McCLARY, | **(Docket No. 43)** |
| Defendant. | |

Currently pending before the Court is Plaintiffs' Motion for Leave to Name Experts and Add Claim for Punitive Damages (Docket No. 43). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

Defendant Pam McClary's father, James McClary, owned four lots on Roberts Road in Boise, Idaho - Lots A, B, C, and D. In 1979, Mr. McClary entered into an option contract to sell Lot D to Paul and Iretta Larsen. On February 12, 1980, Mr. McClary conveyed Lot D to the Larsens who, later, constructed a home on Lot D. Significant to this action, at some unknown point in time, it is believed that Mr. McClary verbally agreed with the Mr. Larsen not to build on Lot B - the adjacent property to the north of Lot D. *See id*. at pp. 2 & 8.

---

[1] The background of this action has already been discussed at length in the Court's January 15, 2011 Memorandum Decision and Order Re: Plaintiff's Motion for Partial Summary Judgment (Docket No. 44). For completeness' sake, they are included here, but without citations to the record.

**MEMORANDUM DECISION AND ORDER - 1**

On December 24, 1999, Plaintiffs Donald and Mary Kay Kayser made an offer to the Larsens to purchase Lot D. The Kaysers' offer included the following handwritten condition:

> Seller providing Buyer satisfactory documentation showing the McClary lot behind subject property cannot be used as a building site for a new home.

At that time, the Larsens' son, Rex Larsen, was the listing agent for Lot D, acting as the dual agent for both his parents and the Kaysers.

According to Defendant, Rex Larsen then (1) instructed his father's attorney to prepare an easement over Mr. McClary's Lot B; (2) dictated the terms to be included in the easement; and (3) delivered the written easement to Mr. McClary to sign. This "Grant of Easement," contained the following provisions:

- WHEREAS, Grantor [Mr. McClary] did make a verbal agreement with Grantees [the Larsens] at the time that Grantees purchased said Lot D from Grantor that, as a material consideration for the purchase of said Lot D, Grantor would not build a structure on said Lot B.

- In consideration of the verbal agreement referred to above and other good and valuable consideration, Grantor does hereby grant to Grantees an easement for an unobstructed view over said Lot B for the benefit of said Lot D.

- The easement granted in this instrument shall run with the land and shall be appurtenant thereto and shall inure to the benefit of the parties hereto, their heirs, personal representatives, successors, and assigns.

- The owner of said Lot B, without the prior written consent of the owner of said Lot D, shall not construct anything on said Lot B, including fences, trees, shrubs, swimming pool, garage, home, or personal property including recreational vehicles that would in any way degrade or restrict the view from said Lot D.

On or around January 11, 2000, Mr. McClary and the Larsens signed the Grant of Easement; Rex Larsen notarized both sets of signatures. The Grant of Easement was then recorded on January 12, 2000.

**MEMORANDUM DECISION AND ORDER - 2**

Mr. Kayser knew Mr. McClary well and, after receiving the Grant of Easement, called Mr. McClary to discuss the background and intent of the Grant of Easement. According to Mr. Kayser, Mr. McClary explained the background of the Grant of Easement in detail and said he was glad to sign it because it merely confirmed his previous agreement with Paul Larsen. Thereafter, the Kaysers purchased Lot D from the Larsens.

Mr. McClary died in 2004. By a Personal Representative Deed, executed on January 24, 2005, Mr. McClary's estate conveyed Lot B and other property to Defendant Pam McClary.

In early 2009, the Kaysers decided to sell Lot D and move to Oregon, ultimately entering into an agreement to sell Lot D to Scott and Susan Richardson on January 15, 2010. On February 16, 2010, before the scheduled February 18, 2010 closing date, Mr. Kayser learned that Ms. McClary constructed a fence on Lot B (along the boundary line between Lots B and D), obstructing the view from Lot D. As a consequence of the fence's construction, the Kaysers' sale of Lot D to the Richardsons was disrupted. To this day, Lot D remains unsold.

The Kaysers bring this action, asserting the following four claims against Ms. McClary: breach of contract, tortious interference with contract, trespass, and quiet title/injunction. As to their quiet title/injunction claim, Plaintiffs seek the entry of a decree, declaring the Grant of Easement to be valid and binding and, thus, having the effect of (1) enjoining Ms. McClary from taking any action in violation of the Grant of Easement and (2) ordering Ms. McClary to remove the above-referenced fence and other improvements constructed on Lot B.

Now, through their Motion for Leave to Name Experts and Add Claim for Punitive Damages, Plaintiffs seek leave from the Court to (1) name expert witnesses as to damages, and (2) add a claim for punitive damages.

**MEMORANDUM DECISION AND ORDER - 3**

## II. DISCUSSION

### A. Modifying the April 26, 2010 Case Management Order as to Expert Disclosures

Plaintiffs seek an extension of time to disclose expert witnesses who will testify to Plaintiffs' alleged damages in light of their inability to sell Lot D. Federal Rule of Civil Procedure 16(b) states that a court's scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." *See* Fed. R. Civ. P. 16(b).

Although Plaintiffs were ordered to make their expert witness disclosures on or before September 10, 2010 (*see* 4/26/10 CMO (Docket No. 20)), they did not. As of September 10, 2010, two significant circumstances existed: (1) Plaintiffs still had a pending sale of Lot D to the Richardsons; and, (2) this Court had not yet ruled on Plaintiffs' Motion for Partial Summary Judgment (Docket No. 14).

Because of the dispute over the Grant of Easement, the Richardsons never "closed" on Lot D; instead, they agreed to extend the closing date at least five times (*see* 1/7/11 Kayser Aff. at ¶¶ 3-4 (Docket No. 43, Att. 3), awaiting the Court's decision on Plaintiffs' Motion for Partial Summary Judgment. According to Plaintiffs, had the sale actually closed, Plaintiffs' monetary damages "would have been measured by the period of delay to the sale, together with costs of litigation." *See* Pls.' Mem. in Supp. of Mot. for Leave, p. 3 (Docket No. 43, Att. 1). However, Lot D never sold and, ultimately, the Richardsons did not extend their purchase offer past September 24, 2010 - two weeks *after* Plaintiffs' expert disclosure deadline.

On January 15, 2011, the Court denied Plaintiffs' Motion for Partial Summary Judgment. *See* 1/15/11 MDO (Docket No. 44). Still, before the Order, Plaintiffs filed the instant Motion, claiming that, "[b]ecause the Plaintiffs have now lost the sale of the [Lot D], the Plaintiffs'

**MEMORANDUM DECISION AND ORDER - 4**

damages are now measured by the diminished value of the property which appropriately may be supported by testimony of expert witnesses." *See* Pls.' Mem. in Supp. of Mot. for Leave, p. 3 (Docket No. 43, Att. 1).

Defendant correctly points out that, at least as of September 24, 2010,[2] Plaintiffs were aware of the possible need to secure expert testimony once the Richardsons decided not to extend the closing date again, but waited nearly four months to seek to modify the Case Management Order. *See* Def.'s Opp. to Mot. for Leave, pp. 7-8 (Docket No. 46). The Court agrees that Plaintiffs could have chosen differently in this respect.[3] Still, while Plaintiffs' Motion for Partial Summary Judgment was pending, the parties were in a limbo of sorts, and perhaps more so in this case than others because of the potential, pending, property sale. Had the Court's decision been issued more quickly, this issue likely never would have arisen. But it didn't, and now this issue *is* before this Court.

Under the circumstances, therefore, the Court finds good cause to allow Plaintiffs the opportunity to name a damages expert beyond the September 10, 2010 deadline. As suggested in

---

[2] Defendant also argues that, well before the September 10, 2010 deadline, Plaintiffs should have been aware (and actually were aware) of the possibility that the Richardsons would never close on Lot D and, therefore, should have already retained the expert witnesses they now seek to name. *See* Def.'s Opp. to Mot. for Leave, p. 7 (Docket No. 46) ("In other words, Plaintiffs were fully aware the Richardsons had no obligation to extend, and that their willingness to extend was tied to summary judgment. . . . . Plaintiffs have known of the exact issue they claim is 'new' since the beginning of this case.").

[3] Rhetorically speaking, even had Plaintiffs prevailed on their Motion for Partial Summary Judgment (but after September 24, 2010), wouldn't Plaintiffs still have needed expert testimony to quantify the damages they now claim are sought? Indeed, Plaintiffs' Motion for Partial Summary Judgment was heard on September 16, 2010 (*after* the expert deadline passed) and moved for leave to name new experts eight days *before* the Court even resolved their Motion for Partial Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiffs' briefing, Plaintiffs are to make an expert witness[4] disclosure pursuant to District of Idaho Local Civil Rule 26.2(b) and Federal Rule of Civil Procedure 26(a)(2)(B) on or before February 11, 2011 and shall make that expert witness immediately available for deposition. Additionally, Defendant is permitted to make a related expert witness disclosure pursuant to District of Idaho Local Civil Rule 26.2(b) and Federal Rule of Civil Procedure 26(a)(2)(B) on or before March 3, 2011 and shall also make that expert witness immediately available for deposition. No rebuttal expert report will be permitted.[5] All other applicable deadlines outlined in the Court's April 26, 2010 Case Management Order, including the March 14, 2011 trial date, are not affected.

**B.      Amending a Complaint to Add a Claim for Punitive Damages**

"A prayer for punitive damages is not a stand-alone cause of action, but flows from an underlying cause of action, such as a breach of contract or a tort, when the conduct of a party meets the threshold level of being oppressive and outrageous." *See Boise Tower Associates LLC v. Washington Capital Joint Master Trust*, 2006 WL 1749656 at *12 (D. Idaho 2006). Conduct justifying punitive damages requires "an intersection of two factors: a bad act and a bad state of mind." *See Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 962 (Idaho 1980). The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of

---

[4] It is unclear from Plaintiffs' briefing how many experts they claim are needed, repeatedly referring to "expert witnesses" throughout. *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Leave, pp. 3-4 (Docket No. 43, Att. 1). Based upon the current status of the action and the limited scope of such expert testimony (*see supra* at pp. 4-5 ("Plaintiffs' damages are now measured by the diminished value of the property . . . .."), the Court sees little reason for more than one expert to so opine. Any corresponding discovery and/or rebuttal is, thus, appropriately reduced so as to preserve the existing March 14, 2011 trial date.

[5] In making this ruling, the Court is in no way endorsing any forthcoming opinions or somehow preemptively insulating it from any challenge that Defendants may have.

**MEMORANDUM DECISION AND ORDER - 6**

conduct with an understanding of - or disregard for - its likely consequences, and must (2) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully. *See Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004). For plaintiffs to be entitled to amend their complaint to add a claim for punitive damages, they need to show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *See* I.C. § 6-1604(2).

Plaintiffs argue that Defendant's "forceful self-help" by building a fence along the boundary line between Lots B and D "constitutes a 'deliberate, willful and malicious' trespass" when considering an August 6, 2009 email (produced after the amendment deadline), with Plaintiff stating:

> Have you been able to find out if anyone else is actually interested in that house or have they received any offers? I am trying to let the lot look as bad as possible and, when I get back to Boise, I have another idea or two that might make a sale problematic for them. I don't know what their situation is at the moment or why they are selling in this market. I feel that I don't have enough information to make a good decision.

*See* Pls.' Mem. in Supp. of Mot. for Leave, pp. 5-6 (Docket No. 43, Att. 1) (citing 1/7/11 Eberlin Aff. at ¶ 5 (Docket No. 43, Att. 2)).

While Defendant does not dispute the strained relationship between the parties, she justifies her conduct as simply maintaining her rights in Lot B. *See* Def.'s Opp. to Mot. for Leave, p. 12 (Docket No. 46) ("It is also no secret Ms. McClary had serious concerns about Plaintiffs selling their property with representation of a view Easement that she had made very clear she disputed. That does not mean Ms. McClary acted with an extremely harmful state of mind when she built the fence. Regardless of her feelings about Mr. Kayser or his actions in obtaining the Easement, Ms. McClary was protecting her interest in the property, period.").

**MEMORANDUM DECISION AND ORDER - 7**

Borrowing language from the statute itself, the Court will defer any decision on Plaintiffs' attempt to add a claim for punitive damages until after a hearing. *See* I.C. § 6-1604(2) ("The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."). Therefore, before the currently-scheduled pre-trial conference, the Court will hear oral argument on this issue on March 1, 2011 at 10:00 a.m. The pre-trial conference will take place immediately thereafter.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Name Experts and Add Claim for Punitive Damages (Docket No. 43) is resolved as follows:

1. Plaintiffs may name one damages expert on or before February 11, 2011 and shall make that expert witness immediately available for deposition. Defendant is permitted to make a related expert witness disclosure on or before March 3, 2011 and shall also make that expert witness immediately available for deposition. No rebuttal expert report will be permitted. In this respect, Plaintiffs' Motion for Leave to Name Experts and Add Claim for Punitive Damages (Docket No. 43) is GRANTED.

///
///
///
///
///

2. On March 1, 2011 at 10:00 a.m., the Court will conduct a hearing on Plaintiffs' attempt to add a claim for punitive damages.



DATED: **February 7, 2011**

_Ronald E. Bush_
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 9**