IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DONALD KAYSER and MARY KAY KAYSER, | ) ) ) | Case No. CV 10-00119-REB |
| Plaintiff, | ) ) ) | **MEMORANDUM DECISION AND ORDER RE:** |
| v. | ) ) ) | **DEFENDANT'S MOTION FOR REMAND (Docket No. 70)** |
| PAM JANE McCLARY, | ) ) ) | **DEFENDANT'S MOTION TO VACATE TRIAL (Docket No. 72)** |
| Defendant. | ) ) | |

Now pending before the Court are (1) Defendant's Motion for Remand (Docket No. 70), and (2) Defendant's Motion to Vacate Trial (Docket No. 72). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## DISCUSSION

**A.   Defendant's Motion for Remand (Docket No. 70)**

On or around February 19, 2010, Plaintiffs instituted this action in Idaho state court. *See* Compl. (Docket No. 1, Att. 3). On March 2, 2010, Defendant removed the action to this Court, arguing in pertinent part that "diversity of citizenship [and] amount in controversy exceeds $75,000." *See* Not. of Removal, p. 1 (Docket No. 1, Att. 1). Defendant now seeks to remand the action back to state court, arguing that, in light of Plaintiffs' recent disclosures, "the amount in

**MEMORANDUM DECISION AND ORDER - 1**

controversy in this case is $45,071." *See* Mem. in Supp. of Mot. for Remand, p. 3 (Docket No. 70, Att. 1).

Plaintiffs correctly note that diversity jurisdiction must be ascertained at the commencement of the action; thus, diversity jurisdiction exists if Plaintiffs' pleadings put more than $75,000 at issue. *See* Pls.' Resp. to Def.'s Mot. for Remand, p. 3 (Docket No. 75); *see also Takeda v. Northwestern Nat. Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985) ("Ordinarily, when removal is proper at the outset, federal jurisdiction is not defeated by later changes or developments in the suit.").[1] Therefore, the amount in controversy is determined from the allegations or prayer in Plaintiffs' underlying pleadings.

Here, Plaintiffs originally asserted causes of action for (1) breach of contract, (2) tortious interference with contract, (3) trespass, and (4) quiet title/injunction - all relating to the existence of an easement, limiting the construction of improvements on property involved in this action. *See* Am. Compl. (Docket No. 1, Att. 3). According to Plaintiffs, Defendant's construction of a fence on the at-issue property (in alleged violation of the easement), impaired the view of Plaintiffs' property, while preventing its sale to a willing buyer. *See id*. As a consequence, Plaintiffs sought (and continue to seek) damages, attorneys' fees, and a decree, (1) declaring the easement to be valid, and (2) ordering Defendant to remove the fence. *See id*. Although not explicitly outlined within the body of Plaintiffs' Complaint, the amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action. In this case, when brought, the amount in controversy exceeded the

---

[1] In *Takeda*, the Ninth Circuit recognized an exception to this general rule "when an indispensable party would destroy diversity." *See Takeda*, 765 F.2d at 819. Such an exception does not apply here.

**MEMORANDUM DECISION AND ORDER - 2**

sum or value of $75,000, exclusive of interest and costs. Indeed, Defendant herself stated as much in her Notice of Removal:

> The Kaysers seek injunctive relief and damages for an alleged breach of contract, alleged tortious interference with contract, and alleged trespass. The Kaysers seek damages and attorney fees in excess of $75,000 for tortious interference with contract for the sale of the Kaysers' home, which is listed for more than $300,000.
>
> Based upon the above facts, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, which grants the Court original jurisdiction over all civil actions in which the matter in controversy exceeds the sum or value of $75,000 and the action is between citizens of different states.

*See* Not. of Removal, p. 2 (Docket No. 1, Att. 1). The fact that Plaintiffs' damages *may* ultimately be less than $75,000 (although disputed by Plaintiffs) is immaterial. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (inability to recover amount adequate to give court jurisdiction does not show bad faith or oust court of jurisdiction).

Moreover, the amount in controversy may include punitive damages if (1) they are recoverable as a matter of state law, and (2) it cannot be said to a legal certainty that a plaintiff would not be entitled to recover the jurisdictional amount. *See Anthony v. Security Pacific Fin. Servs., Inc.*, 75 F.3d 311 (7th Cir. 1996); *see also Ruyle v. Safeco Ins. Co. of America*, 640 F. Supp. 2d 1262, 1265 (D. Idaho 2009) ("The sum or amount in controversy is determined by the value of the object plaintiff is seeking, which may include punitive damages and attorney's fees."). Notwithstanding the Court's recent allowance of a punitive damages claim, Plaintiffs' pleadings originally alleged conduct that, if true, warranted such a claim. *See* Am. Compl., pp. 2-3 (Docket No. 1, Att. 3) ("When the Defendant became aware of the Plaintiffs' agreement to sell Plaintiffs' Property, Defendant willfully, maliciously and with the intent to interfere with the Plaintiffs' sale of Plaintiffs' Property, constructed a fence on Easement Property immediately

adjacent to the Plaintiffs' Property thereby degrading and impairing the view from the Plaintiffs' Property in violation of the expressed provisions of the Easement."); *compare* I.C. § 6-1604 ("claimant must prove . . . oppressive, fraudulent, malicious or outrageous conduct . . . ."). Punitive damages are clearly recoverable, generally, under Idaho state law; further, when Plaintiffs first initiated this action, it could not have been said to a legal certainty that they were not entitled to recover the jurisdictional amount.[2]

These reasons combine to warrant a finding of diversity jurisdiction in this Court - at least as of the time Plaintiffs originally filed their action in Idaho state court. As such, Defendant's Motion for Remand (Docket No. 70) is denied.

**B.     Defendant's Motion to Vacate Trial (Docket No. 72)**

On January 7, 2011, Plaintiffs sought an extension of time to disclose expert witnesses who will testify to Plaintiffs' alleged damages. *See* Pls.' Mot. for Leave to Name Experts (Docket No. 43). On February 7, 2011, the undersigned found good cause to allow Plaintiffs the opportunity to name a damages expert beyond the September 10, 2010 deadline, ordering Plaintiffs to do so before February 11, 2011. *See* 2/7/11 MDO, pp. 5-6 (Docket No. 47). The Court also required that Defendant make a related expert witness disclosure, if any, on or before March 3, 2011. *See id.* at p. 6.

Among the several reasons offered in support of her efforts to vacate the existing March 14, 2011 trial date, Defendant argues that, in light of the Court recently allowing Plaintiffs to

---

[2] This finding should not be interpreted as an endorsement of diversity jurisdiction any time punitive damages are a possibility. Rather courts should be required to scrutinize the underlying claims in their entirety to determine whether the amount in controversy threshold is met. In doing so, this Court finds that Plaintiffs' asserted claims, coupled with the type of relief sought (including punitive damages), establish federal jurisdiction.

**MEMORANDUM DECISION AND ORDER - 4**

name a damages expert after the September 10, 2010 expert disclosure deadline, she not only has not had enough time to fully digest Plaintiffs' recent expert disclosure, but also has not been able to coordinate her own responsive expert testimony.  *See* Def.'s Mot. to Vacate Trial, p. 2 (Docket No. 72).  On this point, Defendant's counsel testified:

> Despite best efforts, Defendant has been unable to obtain meaningful review of the Plaintiffs' expert witness report disclosed on February 11, 2011.  This inability is directly related to the compressed time within which Defendant was required to disclose rebuttal expert witnesses; and the fact counsel's schedule is consumed with trial preparation at the exact time the rebuttal disclosures are due.  Defendant *should be* entitled to the benefit of an expert witness to rebut the opinions of Plaintiffs' expert.  However, that cannot occur if the trial proceeds as scheduled.  The absence of expert rebuttal testimony is highly prejudicial to Defendant, especially since Plaintiffs' expert is expected to offer evidence related to damages.
>
> . . . .  To the extent the Court would even allow evidence of damages at all . . ., Defendant must be entitled to an opportunity to conduct discovery with respect to the late disclosed damages.  That cannot reasonably be done in the thirteen days remaining before trial, and it is significant that no underlying documents supporting the "damages" itemized on March 1, 2011, have been produced, to date.

*See* 3/2/11 Aff. of Julie Fischer in Supp. of Mot. to Vacate Trial, ¶¶ 10(a) & (d) (Docket No. 72, Att. 1) (emphasis in original).  In response, Plaintiffs argue that, even with the abbreviated disclosure protocol outlined above, Defendant was capable of responding to Plaintiffs' latest expert opinion but, simply, failed to do so.  *See* Pls.' Resp. to Def.'s Mot. to Vacate Trial, pp. 2-3 ("Significantly, the Court gave Defendant almost one full month to disclose a 'related expert witness disclosure.'  Viewing the totality of the circumstances of this case, this should have been quite easy for Defendant because she had already retained an appraiser as an expert witness; Defendant simply needed the appraiser to review Kaysers' expert's report, and then appraise a different piece of property, the Kaysers' property (Lot D), instead of the easement lot (Lot B).

**MEMORANDUM DECISION AND ORDER - 5**

For unknown and unexplained reasons, Defendant did not have its current expert witness do this.").

Accepting Defendant's arguments as true and made in good faith (as this Court did with respect to Plaintiffs' arguments in favor of their Motion for Leave to Name Experts (Docket No. 43)), it is appropriate to allow additional time for Defendant to respond to Plaintiffs' recent damages expert disclosure - particularly when considering that any difficulty in so responding is a product of this Court *granting* Plaintiffs' previous request for relief. Recognizing the realities leading up to this situation, Plaintiffs' arguments concerning what Defendant could/should have done in the weeks leading up to trial are not persuasive; that is, just as Plaintiffs were not prepared to go to trial without an expert opinion concerning certain appraised values, Defendant is not prepared to go to trial without responding to one.

In fairness then, this reason alone requires that the existing March 14, 2011 trial date be vacated.[3] Still, the parties are on notice that the Court is not inclined to extend the trial date too far out, particularly given the short amount of time that should be needed for Defendant to

---

[3] Defendant also argues that Plaintiffs' recent amendment to add a claim for punitive damages, as well as Defendant's questionable health, further support that the trial date be vacated. The Court disagrees. First, "it is Defendant's own conduct that dictates whether a claim for punitive damages is warranted. . . . . More discovery will not alter this reality." *See* 3/1/11 MDO, p. 4 (Docket No. 67). Second, while Defendant may or may not be able to attend a 3-4-day trial beginning on March 14, 2011, there is no telling whether her health will have improved or deteriorated in between now and any later trial date. In short, neither reason is compelling.

However, in light of granting Defendant the ability to secure an expert opinion in response to Plaintiffs' February 11, 2011 disclosure, it is appropriate to also formally grant Defendant's pending Motion to Allow Completion of Discovery (Docket No. 40), giving Defendant the opportunity to secure complete copies of the medical records she contends are needed to address the issue of Mr. Kayser's competency to enter into the Grant of Easement.

**MEMORANDUM DECISION AND ORDER - 6**

accomplish the discovery/work she claims is needed to adequately prepare for trial.[4]  An Order setting trial and outlining deadlines moving forward will be forthcoming.[5]

**ORDER**

For the foregoing reasons, it is HEREBY ORDERED that:

1. Defendant's Motion for Remand (Docket No. 70) is DENIED;

2. Defendant's Motion to Vacate Trial (Docket No. 72) is GRANTED; and

3. Defendant's Motion to Allow Completion of Discovery (Docket No. 40) is GRANTED.



DATED: **March 7, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[4]  This additional amount of time is to be devoted only to the issues of responding to Plaintiffs' recent damages calculations (via both expert reports and discovery responses) and securing a complete set of records pertaining to Mr. McClary's medical condition at relevant times in this case.  No other discovery is permitted without leave of Court.

[5]  The Court notes that the parties have already submitted trial briefs, proposed jury instructions, and motions in limine.  The Court is inclined to disregard these submissions (mooting the pending motions in limine) while recommending that the parties re-submit these materials pursuant to future, to-be-decided deadlines so as to accommodate any changes in the nature of the parties' arguments at trial in between now and the ultimate trial date.

**MEMORANDUM DECISION AND ORDER - 7**